WICHTERMAN, Plaintiff-Appellee, v. BROWN, Secretary of State, Defendant-Appellant.

Ohio Appeals, Tenth District, Franklin County.

No. 6288.   Decided October 3, 1959.

Thomas W. Applegate, Columbus, for plaintiff-appellee.

Mark McElroy, Atty. Genl., Michael Kouskouris, Gerald Celebreeze, Asst. Attys. Genl., Columbus, for defendant-appellant.

**OPINION**

By BRYANT, PJ.

· This is an appeal from a final order of the court of common pleas of Franklin County granting a permanent injunction enjoining Ted W. Brown, as Secretary of State, defendant-appellant herein, from taking

steps to place on the ballot on November 3, 1959, a proposed constitutional amendment relative to metropolitan federations. The action seeking the injunction was brought by Paul Wichterman, plaintiff-appellee herein, a registered voter, citizen and taxpayer of Franklin Township in Franklin County, Ohio.

The 103rd General Assembly of Ohio prior to adjournment had acted upon Amended House Joint Resolution No. 31, sponsored by Representative McGovern and others, which according to its title "proposed to amend **Article X, Ohio Constitution** by adding **Sections 5 and 6** thereto with reference to metropolitan federations."

The petition was quite long and set forth in detail the steps taken in connecion with the adoption of the resolution, and the answer likewise set forth three defenses, including a general denial and an affirmative allegation that all constitutional steps required to be taken were fully accomplished and that Wichterman had been guilty of laches.

The parties have agreed that the evidence in the court below shall be taken as the evidence in this court. The evidence includes oral testimony taken before the court below and an agreed statement of facts.

It appears that the resolution here under consideration, which we shall call the McGovern resolution, was with a single exception, properly and regularly adopted by the house and senate of the 103rd General Assembly of Ohio, in the opinion of both parties to this appeal. That exception relates to whether or not there was a compliance on the part of both the house and senate with the requirements of **Section 1, Article XVI, Ohio Constitution,** which so far as here pertinent reads as follows:

"Either branch of the general assembly may propose amendments to this constitution; and if the same shall be agreed to by three-fifths of the members elected to each house. such proposed amendments **shall be entered on the journals, with the yeas and nays,** and shall be submitted to the electors * * *."

We find that the McGovern resolution was adopted by each house of the legislature by the requisite number of votes and it is equally clear that the yeas and nays were entered on the journal. The parties are in complete disagreement as to whether or not the full text of the proposed amendment was entered on the journals of the two houses.

It seems clear that the clerk of each house keeps a detailed record for each legislative day of all of the matters taking place and that the various papers which make up that record are referred to as the original daily journal. Thus for each legislative day for the house of representatives and also for the state senate there is this collection of papers called the original daily journal.

In order to make the contents of each original daily journal available to the full membership of both houses and the public, the clerks of the two houses, at the close of each legislative day, make physical delivery to the printing firm holding this printing contract, the original daily journals for the two houses. Without change or modification, each of the two daily journals is set up in type and 600 copies are printed and are ready the following morning for distribution to the full member-

ship of the house and senate and in a limited sense to the public. The printed version of each day's journal is referred to as the printed daily journal.

The McGovern resolution was adopted in the House of Representatives on June 3, 1959, and the printed daily journal for that date, available for distribution the following day, referred to the resolution by title only, but did not contain the text of the proposed amendment. This resolution was acted on by the senate on July 8, 1959 and July 22, 1959, the former date being action to amend and adoption in amended form, and the latter date being the time when the senate withdrew its amendments and in effect, as the lower court found, adopted the resolution in the form in which adopted in the house. The printed daily journal for the senate for these two dates, available for distribution on the following legislative day, set forth the title of the resolution, the yeas and nays, and on the earlier date the text of the senate changes in the proposed amendment, but nowhere did either of the printed daily journals of the senate for the dates in question contain the text of the proposed constitutional amendment.

On August 1, 1959, the President of the Senate and the Speaker of the House signed the enrolled form of the McGovern resolution and on August 14, 1959, the 103rd General Assembly of Ohio adjourned sine die and thus brought to a close the regular session of that body. On August 28, 1959, at 9:05 A. M., this proceeding was begun by the filing of the petition for an injunction by Wichterman.

It was on August 28, 1959, at about twelve noon, three hours after the filing of this lawsuit, that the clerks of the two houses for the first time entered the text of the constitutional amendment proposed by the McGovern resolution into the original daily journal of their respective houses by inserting a copy of the enrolled resolution containing the amendment as proposed in full.

It is in face of the fact situation as above set forth that the question arises whether or not the legislature has complied with the terms of **Section 1, Article XVI, Ohio Constitution**, herein above quoted in part, which requires, in case of agreement by a three-fifths vote of the members elected to each house that "such proposed amendments shall be entered on the journals, with the yeas and nays."

The General Assembly of Ohio is a coordinate branch of government and its actions are entitled to the highest respect by the other two branches of government, the executive and the judicial. There is no question that unless stopped by the courts, the Secretary of State will publish the text of the proposed amendment relative to metropolitan federations.

Thus the electorate will be fully informed when they go to the polls and can make the ultimate decision as to whether or not this proposed amendment should be added to the Constitution of Ohio. We also observe that there is no confusion or uncertainty as to the exact form of the language of the proposed constitutional amendment and that on August 1, 1959, the presiding officers of the two houses signed the certificate attached to the finalized or enrolled form of the McGovern

resolution, thereby attesting to the fact that the resolution was duly adopted and containing the full text of the proposed amendment.

We also observe that this so-called certification of the two presiding officers as provided for in **Section 17, Article II, Ohio Constitution,** is regarded as sufficient in the serious and important task of enacting laws including criminal statutes which may take away the liberty or even the life of those affected.

But the question now before us is not new to our courts. In 1957, the Supreme Court of Ohio in the case of **Leach v. Brown, Secretary of State, 167 Oh St 1,** involving a constitutional amendment proposed by the legislature, ruled that the amendment might not be placed on the ballot where the text of the proposed amendment as printed in the journals of the two houses was substantially different.

In Leach v. Brown, supra, there was a per curiam opinion concurred in by four of the seven judges and one of these four has since died. There were strong dissenting opinions by Weygandt, C. J., and Herbert, J. One judge did not participate.

The dissenting opinions pointed out the difficulties attendant upon a legislative session and the nearly inhuman burden placed upon the officials and employees keeping the records. They deplored the distinction between the weight given to the certificates of authenticity by the signatures of the presiding officers in the case of bills being enacted into laws and the opposite view with respect to resolutions proposing to submit to the voters amendments to the Constitution.

In Leach v. Brown, supra, the sole error was that after the amendment of a resolution proposing to submit a constitutional amendment, a clerk by mistake printed in the journal the text of the proposed amendment before changes were made. The correct text was published in one journal, the correct text could be ascertained by considering other parts of the other journal and the form of resolution certified to by the officers of the two houses unquestionably was correct, yet the entire proceeding was halted.

In light of that decision, which so far as we can find, is unreversed, we have no choice of decision other than to make the findings of fact which we have set forth above and to determine the law just as it was determined by the court below. In this case, there was no publication or entering on the journal at all of the text of the proposed amendment at anytime while the legislature was in session, or indeed up to the very moment when the petition in this case was filed.

We therefore find and determine that the permanent injunction as prayed for should be allowed and the order of the court below will be reinstated and the order heretofore made by this court staying the injunction of the court below will be set aside. In the event of an appeal if a further stay be desired, provision may be made in the entry journalizing this decision.

DUFFY, J, concurs.
MILLER, J, not participating.